UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| HIGHMARK, INC., <br><br> Plaintiff, <br><br> vs. <br><br> NORTHWEST PIPE COMPANY, a Washington Corporation, <br><br> Defendant. | CIV. 10-5089 <br><br> **AMENDED COMPLAINT** |

Plaintiff by and through its attorney, Steven C. Beardsley, hereby complains and alleges a cause of action as follows:

## PARTIES

1. Plaintiff Highmark, Inc. ("Highmark") is a corporation organized and existing under the laws of the State of South Dakota with its principal place of business located in South Dakota.

2. Defendant Northwest Pipe Company, Inc. ("NWP") is a corporation organized and existing under the laws of the State of Washington with its principal place of business located in Washington.

## JURISDICTION

3. There is complete diversity of citizenship between the Plaintiff and Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, jurisdiction is proper under 28 U.S.C. § 1332.

1

## VENUE

4. Venue is properly laid within the District of South Dakota pursuant to 28 U.S.C. § 1391 (a)(2).

## GENERAL ALLEGATIONS

5. Highmark is the contractor for the Jackson Springs Water Transmission Mains Project ("Jackson Springs Project") for the City of Rapid City.

6. On December 29, 2009, a written contract was entered into by Defendant, NWP and Plaintiff, Highmark.

7. The contract lists Highmark as the buyer and NWP as the seller of steel pipe for the Jackson Springs Project in Rapid City, South Dakota.

8. It was agreed upon between all parties that the steel pipe would conform to adhesion specifications of 2,000 pounds per square inch (psi) average and 1,750 psi minimum.

9. More than 50% of steel pipe supplied by NWP failed to meet the agreed upon specifications.

10. As a result of substantial pipe failure, the City of Rapid City rejected the steel pipe which effectively halted the project.

11. Highmark suffered injury to its reputation and substantial monetary loss as a direct legal result of NWP's failure to provide steel pipe in accordance with the contract.

## COUNT ONE:
## BREACH OF CONTRACT

12.     Plaintiff restates and realleges all allegations set forth in paragraphs 1-11 above.

13.     All parties are capable of entering into a legally enforceable contract.

14.     All parties consented to the agreement.

15.     The contract included a lawful object and sufficient cause or consideration.

16.     The steel pipe adhesion values agreed to by all parties are set forth in the City of Rapid City Specifications Book, Section 09950 Pipeline Coatings and Linings.

17.     The specifications agreed upon by all parties required the steel pipes to be polyurethane coated and tested with an average value of 2,000 psi with an absolute minimum of 1,750 psi. (Rapid City Specifications Book, Section 09950.73).

18.     In a letter dated October 5, 2010, Frank Knafelc, operations manager at NWP, acknowledged the agreed upon adhesion values required by the terms of the specifications and the contract were 2,000 psi average and 1,750 psi minimum.

19.     Defendant, NWP, failed to provide steel pipe with adhesion values of 2,000 psi average and 1,750 psi minimum, which was clearly set forth in the agreement.

20. Defendant's failure to comply with the agreed upon specifications resulted in a breach which legally caused Plaintiff's damages.

## COUNT TWO:
## BREACH OF EXPRESS WARRANTY

21. Plaintiff restates and realleges the allegations set forth in paragraphs 1-20 above.

22. Pursuant to the terms of the Contract, NWP warrants the following:

> Seller warrants . . . that the goods are made in workmanlike manner in accordance with the specifications therefor [sic] supplied or agreed to by Contractor. (Contract Sec. 10, pg. 7).

23. Maximum failure rate allowed by the agreed upon specifications on pipe inspected at either the plant or in the field is 5%. If more than 5% of the pipe fails, the entire production run may be rejected. (Rapid City Specifications Book p. 09950.36 ¶ (P)).

24. Brian McEwen, hired and employed by NWP, tested all 27 pieces of pipe located at the Jackson Springs job site. Of all 27 pieces of pipe tested in the field, 20 pieces failed, resulting in 74% failure rate for pipe tested in the field. Of the remaining 20 pieces of pipe tested at NWP's plant, 6 pieces failed, resulting in 30% failure rate for pipe tested at the plant. (June 27, 2010 letter from Rustnot to NWP).

25. Testing completed by an employee of NWP revealed more than 50% of the pipe supplied for the Jackson Springs Project did not meet the specified adhesion values agreed upon by the parties. (June 27, 2010 letter from Rustnot to NWP).

26. Steel Pipe supplied by NWP to Highmark for the Jackson Springs project had a failure rate well above the 5% maximum failure rate.

27. Defendant's failure to produce steel pipe conforming to the agreed upon specifications constituted a breach of its express warranty.

28. Defendant's breach of its express warranty was a direct and legal cause of Plaintiff's damages.

## COUNT THREE:
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

29. Plaintiff restates and realleges the allegations set forth in paragraphs 1-28 above.

30. Defendant failed to provide merchantable goods.

31. The steel pipe failed to conform to the adhesion values set forth in the agreement.

32. The steel pipe was not fit for the ordinary purpose for which it is used.

33. Defendant's breach of its implied warranty of merchantability was the direct and legal cause of Plaintiff's damages.

## COUNT FOUR:
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

34. Plaintiff restates and realleges the allegations set forth in paragraphs 1-33 above.

35. At the time the parties entered into the contract, Defendant was aware of the purpose for which the goods were required.

36. At the time the parties entered into the contract, Defendant was aware of Plaintiff's reliance on Defendant to select or furnish suitable goods.

37. Defendant failed to provide suitable goods under the contract.

38. Defendant's breach of its implied warranty of fitness for a particular purpose was the direct and legal cause of Plaintiff's damages.

**WHEREFORE**, Plaintiff prays for relief from this Court as follows:

1. A determination that:

    a. Defendant breached the contract for the sale of goods to Plaintiff;

    b. Defendant breached its express warranty; and

    c. Defendant breached the implied warranty of merchantability.

2. An award of all detrimental damages as a result of the Defendant's breach.

3. An award of incidental damages including but not limited to expenses incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected; all commercially reasonable charges, expenses or commissions in connection with effecting cover; and any other reasonable expenses incident to the breach.

4. An award of all consequential damages including but not limited to loss of income incurred as a result of the Defendant's breach.

5. An award for past and future damages for damage to Plaintiff's reputation caused by Defendant's action.

6. An award of costs, disbursements and attorneys' fees.

7. Such other and further relief as the Court may find just and equitable.

Respectfully submitted this 1st day of December, 2010.

BEARDSLEY, JENSEN & VON WALD,
Prof. L.L.C.

By: /s/ Steven C. Beardsley
Steven C. Beardsley
4200 Beach Drive, Suite 3
P.O. Box 9579
Rapid City, SD 57709
Telephone: (605) 721-2800
Facsimile: (605) 721-2801
Email: sbeards@blackhillslaw.com
*Attorneys for Plaintiff*

**DEMAND FOR JURY TRIAL**

In accordance with Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial of all his claims.

/s/ Steven C. Beardsley