UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| HIGHMARK, INC., | ) | CIV. 10-5089-JLV |
| | ) | |
| Plaintiff, | ) | ORDER |
| | ) | ON DISCOVERY |
| vs. | ) | MOTIONS |
| | ) | |
| NORTHWEST PIPE COMPANY, a | ) | |
| Washington Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

Before the court are a number of discovery motions; namely, defendant

Northwest Pipe Company's ("NPC") motion for a protective order (Docket 20);

plaintiff Highmark, Inc.'s ("Highmark") motion to compel (Docket 22);

Highmark's second motion to compel (Docket 38); and NPC's motion to compel

(Docket 51). A hearing was held December 8, 2011, at which the court

addressed the issues and made oral rulings on several matters. This order

documents those decisions and resolves all pending motions.

**DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

NPC's motion requests the court limit plaintiff to 25 interrogatories as

provided by the court's scheduling order (Docket 15) and Fed. R. Civ. P.

33(a)(1).[1] (Docket 20). Highmark resists defendant's motion asserting

---

[1]NPC's answers and responses to Highmark's interrogatories and request
for production of documents (Docket 20-5) do not seek a protective order. The
relevancy of this omission will be addressed later in this order.

Highmark's interrogatories comply with both the court's order and Rule 33. (Docket 22).

The number of interrogatories a party is allowed to serve on an opposing party is governed by Rule 33. That rule provides in part, "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). NPC argues Highmark's amended first set of interrogatories ("Interrogatories") contains 78 interrogatories, captioned as 25 interrogatories with 53 separate subparts. (Docket 21, p. 3). NPC objected to all interrogatories after NPC's calculation that 25 interrogatories had been completed. Id. By NPC's calculation, its obligation to answer Highmark's Interrogatories ended at interrogatory number 7, where NPC responded:

> Plaintiff has exceeded the twenty five (25) interrogatory limit imposed by the Court's Scheduling Order, dated March 2, 2011 and Fed. R. Civ. Procedure 33(a)(1). While the Scheduling Order does not specifically address subparts to interrogatories as they relate to the total number of interrogatories allowed, in accordance with Fed. R. Civ. Procedure 33(a)(1) NWP believes that a reasonable, good faith interpretation of the Scheduling Order provides that twenty five (25) interrogatories, including discrete parts, is the maximum allowed to be posed by each party. If the Scheduling Order is subsequently clarified and the Court determines twenty five (25) interrogatories, not including subparts, are allowed by be [sic] posed by each party, NWP will promptly supplement its response to these interrogatories accordingly.

(Docket 20-5, p. 6). NPC interposed this same objection to the remaining interrogatories 8-24. Id. at pp. 7-12. NPC argues, without specificity, that Highmark's interrogatories 1-6 and each subpart must be counted toward the

2

maximum of 25 interrogatories because each subpart is a "discrete subpart."

(Docket 21, p. 4).

The Advisory Committee Notes for the 1993 amendment to Rule 33

provides:

> Each party is allowed to serve 25 interrogatories . . . . Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

146 F.R.D. 401, 675-76.  As explained in Kendall v. GES Exposition Services,

Inc., 174 F.R.D. 684 (D. Nev. 1997), a frequently cited authority on this issue:

> Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding they are joined by a conjunctive word and may be related.

Id. at 685-86.

"Subparts count as one interrogatory if 'they are logically or factually

subsumed within and necessarily related to the primary question.' " Waterbury

v. Scribner, No. 1:05-cv-0764 OWW DLB PC, 2008 WL 2018432 *2 (E.D. Cal.

May 8, 2008) (internal citation omitted) (quoting Kendall, 174 F.R.D. at 685).

"In general, . . . 'interrogatories containing subparts directed to eliciting details

3

concerning a common theme should be considered a single question, although the breadth of the area inquired about may be disputable.' " Brevet Press, Inc., v. Fenn, No. CIV. 06-4056-KES, 2007 WL 1726526 *4 (D.S.D. June 14, 2007) (citing Charles A. Wright and Arthur R. Miller, 8A Federal Practice & Procedure § 2168.1 at p. 261 (2d ed. 1994)).  An interrogatory is not violative of Rule 33(a)(1) if a subpart of the interrogatory is "directed at eliciting details concerning a *common theme*." Cardenas v. Dorel Juvenile Group, Inc., 231 F.R.D. 616, 620 (D. Kan. Oct. 21, 2005) (emphasis in original).

    "The word, 'discrete,' essentially means, 'separate.' " Kendall, 174 F.R.D. at 685.  "Once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated." Willingham v. Ashcroft, 226 F.R.D. 57, 59 (D.D.C. Jan. 25, 2005).  A subpart seeking identification or disclosure of documents "is really a fugitive request for production of documents and the discovery effort would be better served in that format." Kendall, 174 F.R.D. at 686.  See also Smith v. Café Asia, 256 F.R.D. 247, 254 (D.D.C. March 23, 2009) ("each interrogatory that seeks identification of documents in addition to an answer will be counted as two interrogatories.").

Without going through each interrogatory separately, the court focuses on a number of interrogatories which pertain to NPC's objections and the purposes of Rule 33(a)(1).  The first is interrogatory number 9 which states:

> State the names, addresses, places of employment and last known whereabouts of all other persons claimed by you or your attorneys or your representatives to have knowledge or information of any fact or record which is relevant to any of the issues involved in this litigation.

(Docket 20-5, p. 7).  This interrogatory can be construed as having four subparts, that is:

1.   Who has information relevant to this litigation;

2.   What is each person's address;

3.   Where does each person work; and

4.   What is the person's last known whereabouts, if you do not know the current address.

Each subpart seeks to obtain information concerning a "common theme" that is not disjunctive and does not contain unrelated topics.  Brevet Press, 2007 WL 1726526 *4.  Subparts 2-4 are secondary to the principal question "who has information."  Kendall, 174 F.R.D. at 685-86.  Similarly, each of the subparts of interrogatory number 10 is dependent upon the principal question: "have you ever been a party to a lawsuit before" and focuses on a common theme.  (Docket 20-5, p. 7).  Finally, interrogatory number 18 and its subparts focus on the sale of defendant's product.  Id. at p. 10.

5

Applying the simple system used in <u>Kendall</u>, the court concludes plaintiff's interrogatories are in compliance with Rule 33.  Defendant's motion for a protective order (Docket 20) is denied.  During the course of the hearing, plaintiff asked for leave of court to revise a number of its interrogatories before having defendant complete its answers and responses.  Plaintiff's oral motion is granted.  Plaintiff shall revise interrogatories 10, 12, 17, 18, and 19 and serve them on defendant for a timely response.  All of plaintiff's other interrogatories shall be answered within thirty days of this order.

Rule 33 also requires "the person who makes the answers [to interrogatories] must sign them, and the attorney who objects must sign any objections."  Fed. R. Civ. P. 33(b)(5).  NPC's answers to Highmark's Interrogatories were not signed by its corporate representative but, rather, only by its attorney.  <u>See</u> Docket 20-5, p. 24.  Defendant's amended answers filed in conformity with this order shall comply with Rule 33(b)(5).

**PLAINTIFF'S MOTION TO COMPEL**

Highmark's motion (Docket 22) is the companion to NPC's motion for a protective order.  Having concluded NPC's motion for protective order should be denied, the court finds Highmark's motion moot.[2]  The court is not compelled by Fed. R. Civ. P. 37(a)(5) to assess Highmark's attorney's fees against NPC.

---

[2]The court need not resolve the parties' factual dispute as to whether Highmark's motion to compel was timely under the court's scheduling order.  <u>See</u> NPC's brief in resistance to Highmark's motion to compel.  (Docket 25).

**PLAINTIFF'S SECOND MOTION TO COMPEL**

On August 8, 2011, Highmark filed a second motion to compel requesting production of certain redacted documents and complaining NPC's privilege log (Docket 40-1) was inadequate so that any privilege or work product protection was waived.  (Docket 38).  Highmark also requested that NPC produce certain documents.[3]  Id.  With the filing of NPC's second privilege log, Highmark requests production of all documents which do not properly include an attorney designation to justify an attorney-client privilege or requests an *in camera* inspection by the court.  (Docket 45, pp. 4-5).

NPC argues the court must deny Highmark's second motion to compel for four reasons, which are summarized as:

1.    Plaintiff's second motion to compel is untimely;

2.    Plaintiff failed to comply with D.S.D. LR 37.1 prior to filing the motion;

3.    Defendant's privilege log complies with Fed. R. Civ. P. 26(b)(5); and

4.    The "other projects" documents are not relevant to the issues in this litigation.

See Docket 42.

------------------------------------------------

[3]NPC's first privilege log is dated May 20, 2011, but it was not mailed to Highmark's counsel until July 22, 2011.  (Docket 40-1).  It was received by Highmark on July 25, 2011.  (Dockets 39, p. 1).  NPC served a second privilege log dated August 25, 2011, but it was not hand-delivered to Highmark's counsel until August 29, 2011.  (Docket 46-1).  The second log appears to be an expansion of the first privilege log and includes additional entries after Highmark's second motion to compel was filed.  (Docket 46-1, pp.4-6).  NPC offers no reason for these late disclosures.

<u>LOCAL RULE 37.1</u>

Local Rule 37.1 requires the parties to make a good faith effort to resolve any discovery dispute prior to filing a motion to compel.  D.S.D. LR 37.1.  The rule requires that "[a] party filing a motion concerning a discovery dispute shall file a separate certification describing the good faith efforts of the parties to resolve the dispute."  <u>Id.</u>  While not filed as a "separate certification," Highmark's motion contains a separate paragraph in which its attorney "confirms that it has attempted in good faith to resolve this discovery dispute with Northwest Pipe prior to the filing of this Motion and as provided by D.S.D. LR 37.1."  (Docket 38, p. 1).  In resistance to Highmark's certification, NPC filed the affidavit of Attorney Michael K. Sabers.  (Docket 43).

NPC's answers and responses to plaintiff's interrogatories and request for production of documents ("Responses") were hand-delivered to plaintiff's counsel on May 20, 2011.  (Docket 20-5).[4]  NPC's Responses asserted a number of objections and privileges, including "attorney-client privilege," "work product," work of a "non-testifying consultant," "otherwise immune from discovery or inquiry," and the requested documents are "neither relevant nor reasonably calculated to lead to the discovery of admissible evidence."  <u>Id.</u>

---

[4]Defendant filed its answers and responses a second time.  (Docket 43-1).  The court will refer to Docket 20-5 for the remainder of this order.

8

Assertion of a privilege or protection from discovery is governed by Fed.

R. Civ. P. 26.  The rule requires in part:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i)      expressly make the claim; and
>
> (ii)    describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5).  This rule contemplates a party must file its privilege log simultaneously with the assertion of a privilege in response to a discovery request.  See St. Paul Reinsurance Company, Ltd. v. Commercial Financial Group, 197 F.R.D. 620, 628 (N.D. Iowa December 19, 2000) ("The party asserting the privilege meets its burden of providing a factual basis for asserting the privileges when it produces a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its . . . counsel.") (internal quotation marks and alterations omitted).

NPC's first privilege log was not received by Highmark's counsel until July 25, 2011.  NPC offers no justification for failing to produce the first privilege log simultaneous with its delivery of NPC's Responses to Highmark's counsel.  It is clear from the record counsel discussed the quality of NPC's

9

Responses while NPC's motion for a protective order was pending before the court.  See Dockets 29, 36, 43 & 43-2.  While it was NPC's position from the time of the filing of NPC's answers and responses that the "other projects documents" were not discoverable, it is also clear the parties continued to discuss the production of documents up to August 5, 2011.  See Dockets 43, 43-2, and 43-3.  The court finds Attorney Sabers' e-mail of July 29, 2011, followed by his letter of August 5, 2011, made it clear to Highmark's counsel the discussion was concluded.  See Dockets 43, 43-2, and 43-3.  The court finds the good faith requirements of D.S.D. Local Rule 37.1 have been met.

<u>TIMELINESS OF PLAINTIFF'S SECOND MOTION TO COMPEL</u>

The court's scheduling order requires that "motions to compel discovery shall be filed no later than fourteen (14) days after the subject matter of the motion arises.  Motions to compel discovery shall not be filed until the parties have complied with D.S.D. LR 37.1."  (Docket 15, ¶ 5).  NPC's privilege log was not received by Highmark until July 25, 2011.  From that date through August 5, 2011, the parties sought to resolve their differences under D.S.D. LR 37.1.  Those efforts concluded unsuccessfully on August 5, 2011.  Highmark's second motion to compel was filed on August 8, 2011.  The court finds Highmark's second motion to compel was timely filed.

<u>PRIVILEGE LOG CHALLENGES</u>

Highmark argues NPC's privilege log fails to account for the redactions found in documents produced as NWP-H1004610 and NWP-H1004611.  (Docket 39, p. 3).  Highmark believes these documents to be "pipe testing

spreadsheets for the Jackson Springs Project" and "highly relevant and not subject to any privilege or work-product protection." Id.  The Jackson Springs Project is the focus of this litigation.  See Docket 6.

NPC's brief does not respond to Highmark's argument.  See Docket 42. NPC's second privilege log, hand-delivered to Highmark's counsel on the same day as NPC's brief, asserts these documents are not subject to discovery as they are associated with an unrelated project.[5]  (Docket 46-1, p. 3.)  Whether specifically related to the Jackson Springs Project or other projects of defendant, these documents will be further addressed later in this order.  A third privilege log was submitted on December 2, 2011.  (Docket 59-1). Highmark objects to the content of NPC's third privilege log.

To comply with Rule 26(b)(5), a privilege log must generally include:

1.    The log number or bates number(s) identifying the number of pages;

2.    The date on which the document was prepared;

3.    A description of the document;

4.    The identity and position of the author;

5.    The identity and position of all recipients of the document;

---

[5]Defendant's designation as "Unrelated" is its shortcut for the full privilege asserted, that is, "[n]either relevant nor reasonably calculated to lead to the discovery of admissible evidence as redacted portion of document concerns a project which is not the subject of the contract which is the subject of the breach of contract/warranty claims brought by Plaintiff in this action (hereinafter referred to as 'Unrelated')."  See Dockets 40-1, p. 1 & 46-1, p. 1.

6.      The purpose for which the document was prepared;

7.      The specific privilege or protection being asserted; and

8.      Any other pertinent information to assist in establishing the elements of the privilege or protection asserted.

See generally Rutter Group Practice Guide, Federal Civil Procedure Before Trial, § 11:1919, Privilege log content and Form 11:A (rev. 2011).  (This log was known as a "Vaughn Index"[6] and customarily contained the same information).  See Harper v. Auto-Owners Insurance Co., 138 F.R.D. 655, 664 (S.D. Ind. 1991) ("This index must list, for each separate document, the authors and their capacities, the recipients (including copy recipients) and their capacities, the subject matter of the document, the purpose for its production, and a detailed, specific explanation of why the document is privileged or immune from discovery.  This last explanation must include a comprehensive presentation of all factual grounds and legal analyses in a non-conclusory fashion.").  See also Rice v. Reliastar Life Insurance Co., No. 2:11-cv-548-FtM-29SPC, 2011 WL 4596118 *4-5 (M.D. Fla. Oct. 3, 2011); Tourgeman v. Collins Financial Services, Inc., Civil No. 08cv1392-JLS (NLS), 2010 WL 2181416 *5 (S.D. Cal. May 25, 2010); Wildearth Guardians v. United States Forest Service, 713 F. Supp. 2d 1243, 1266 (D. Colo. 2010); New Jersey v. Sprint Corporation, 258 F.R.D. 421, 448-49 (D. Kan. July 2, 2009); Trudeau v. New York State

_____

[6]Vaughn v. Rosen, 484 F.2d 820 (D.D.C. 1973).

Consumer Protection Board, 237 F.R.D. 325, 334-35 (N.D.N.Y. July 21, 2006);

Export-Import Bank of the United States v. Asia Pulp & Paper Co., 233 F.R.D.

338, 343 (S.D.N.Y. Nov. 17, 2005); United States v. Construction Products

Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996).

The party asserting a privilege has the burden of proving that a factual

basis exists for that privilege.  Rabushka ex rel. United States v. Crane Co.,

122 F.3d 559, 565 (8th Cir. 1997).  The party asserting the privilege "meets its

burden of providing a factual basis for asserting the privileges when it produces

a detailed privilege log stating the basis of the claimed privilege for each

document in question, together with an accompanying explanatory affidavit of

its . . . counsel."  Id. (internal citation and alternations omitted).  While NPC's

first privilege log (Docket 20-1) does not contain all of the categories of

information generally required of a privilege log, its second privilege log (Docket

46-1) contains the required categories of information.

Attorney Sabers does not claim the redacted documents identified in its

privilege logs and marked "Unrelated" are subject to a privilege, but rather the

documents were included for convenience so the redacted portions of each

document could be explained.  (Docket 43, ¶ 9).  "The documents were

redacted not because they were privileged, but because they contained

information regarding other projects/contracts, i.e., they were not relevant or

likely to lead to the discovery of admissible evidence."  Id.  NPC's brief did not

address any of the entries posted to the second privilege log after Highmark's second motion to compel was filed.

Examining NPC's third privilege log, the court finds it to be inadequate as defendant has improperly grouped large volumes of documents into a single log entry.  See Docket 59-1, p. 1.  Grouping a total of 665 pages, bates numbered NWP-HI003357-004222, as protected by "attorney-client communication & work product" does not advise either the court or opposing counsel of the specific nature or description of the documents contained in the grouping so plaintiff can make an appropriate challenge.  Id.  NPC is expected to provide sufficient detail in its privilege log to allow opposing counsel to make an initial decision to challenge the entry.  It is then for the court to decide whether the attorney-client or work product privilege applies.  NPC's third log fails to a provide sufficient detail about documents it claims are covered by a privilege. The most expedient way to resolve this deficiency is to require NPC to submit a more detailed log identifying each separate document with an adequate description in the format of the third privilege log.  See PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership, 187 F.3d 988, 992 (8th Cir. 1999); Rabushka, 122 F.3d at 565.

Separate and apart from the privilege issue are NPC's claims that certain documents are "unrelated, " "proprietary and confidential," or "not relevant nor likely to lead to discovery of admissible evidence."  (Docket 46-1).  "Rule 26(b)

14

of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." <u>Hofer v. Mack Trucks, Inc.</u>, 981 F.2d 377, 380 (8th Cir. 1992). "While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery) . . . ." <u>Id.</u> (referencing <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 350-51 (1978)).  A party seeking discovery is merely required to make a threshold showing of relevance, which is more relaxed than the showing required for relevance in the context of admissibility. <u>Id.</u> at 351.  The party resisting production of discovery bears the burden of establishing lack of relevancy or that complying with the request would be unduly burdensome.  <u>See St. Paul Reinsurance Co. v. Commercial Financial Corp.</u>, 198 F.R.D. 508, 511 (N.D. Iowa 2000).  "[T]he mere statement . . . that [an] interrogatory [or request for production] was 'overly broad, burdensome, oppressive or irrelevant' is not adequate to voice a successful objection." <u>Id.</u> (internal citation omitted).  "[T]he party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome, or oppressive." <u>Id.</u> at 512 (internal citation omitted).  "Because the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive is

15

not in itself a reason for refusing to order discovery which is otherwise appropriate." In re Folding Carton Antitrust Litigation, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (internal citation omitted).  "[T]he fact that answering the interrogatories will require the objecting party to expend considerable time, effort, and expense consulting, reviewing, and analyzing huge volumes of documents and information is an insufficient basis to object." Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996) (internal citation omitted).

As the court advised the parties at the hearing, there is no privilege for "confidential or proprietary" documents.  Simply because a document may be "proprietary" or "confidential" does not protect it from discovery.  Under Fed. R. Civ. P. 26(c)(1), it is NPC's duty to move for a protective order.  "[T]he party opposing discovery must show that the information is a 'trade secret or other confidential research, development, or commercial information,' under Rule 26(c)(7) and that its disclosure would be harmful to the party's interest in the property." In re Remington Arms Co., Inc., 952 F.2d 1029, 1032 (8th Cir. 1991).  "The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial." Id.  "If the party seeking discovery fails to show both the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted,

and the [confidential materials] are not to be revealed." Id.  "If the party seeking discovery shows both relevance and need, the court must weigh the injury that disclosure might cause to the property against the moving party's need for the information." Id.  The court then fashions the manner or conditions under which the particular documents are disclosed to plaintiff or are available for other purposes.  Fed. R. Civ. P. 26(c).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Broad discovery is an important tool for the litigant, and so '[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.' " WWP, Inc. v. Wounded Warriors Family Support, Inc., 628 F.3d 1032, 1039 (8th Cir. 2011) (citing Fed. R. Civ. P. 26(b)(1)).  Rule 26 confers broad discretion on the court to decide when discovery is appropriate and how to manage discovery issues.

Highmark's amended complaint alleges NPC's "steel pipe would conform to adhesion specifications of 2,000 pound per square inch (psi) average and 1,750 psi minimum.  More than 50% of the steel pipe supplied by NWP [NPC] failed to meet the agreed upon specifications."  (Docket 6, ¶¶ 8 & 9).  Highmark alleges NPC's agent tested all of the pipe with failure rates of 74 percent in the field and 34 percent at the plant.  Id. at ¶ 24.  NPC denied these allegations and asserted the parties' contract set the specifications regarding

manufacturing and testing of the pipe.  (Docket 11, ¶¶ 8, 9 & 24).  NPC also alleged "[p]laintiff's damages, if any, were caused by its own actions and failures to act . . . . " Id. at p. 5, ¶ 9.

Highmark argues the Lewis and Clark project data is discoverable because that project "deals with the exact same testing procedures and pipe failure rate as seen in [the Jackson Springs Project]."  (Docket 39, p. 5).  NPC responds that "[e]ven if the pipe in the other projects were similar, that would not make documents related to the other contracts discoverable . . . where the claims only relate to whether the Jackson Springs Project . . . contract was breached."  (Docket 42, p. 10).

Highmark seeks information concerning the Lewis and Clark project, specifically:

    1.    The parties involved;

    2.    The nature of the contract;

    3.    The type of pipe required; and

    4.    Summary of all testing done on the pipe.

(Docket 20-4, Interrogatory No. 11).  Coupled with the interrogatory, Highmark sought the production of "[a]ll reports, summaries, documents or data of whatever nature or description relating to any adhesion testing performed at any time by the Quality Assurance Department of [NPC], or any representative of [NPC], on any Lewis and Clark Segment 10 project pipe." Id. at Request No.

18

7.  The same questions and requests were made regarding NPC's pipe used in other projects.  See generally Docket 20-4.

Courts customarily allow discovery of other "failures" or "testings" and presentation of that evidence to juries.  See Crump v. Versa Products, Inc., 400 F.3d 1104, 1109 (8th Cir. 2005) (22 allegations of hinge failure are "evidence of . . . 22 substantially similar incidents . . ."); Cook v. Kartridg Pak Co., 840 F.2d 602, 604 (8th Cir. 1988) (the court committed no error in restricting plaintiff's "discovery to injuries 'similar to plaintiff's such as incidents where people received injuries from the crimping head of either this model packaging machine or similar models.' "); Hofer v. Mack Trucks, Inc., 981 F.2d 377, 381 (8th Cir. 1992) ("discovery may be allowed where a plaintiff alleges that the defendant was on notice of a defect, that an alternative design was feasible and the defendant had knowledge of the same, that a defendant did not eliminate a previously occurring defect in design, or that previous, similar accidents related to the accident at issue had occurred.").  Although these involve tort injuries, the same rationale applies to a breach of contract claim.  NPC has not met its "burden under [Rule 33(b)(4)] of making a specific showing of reasons why the interrogatories [and requests for documents] should not be answered or documents not produced . . . ."  Burns, 164 F.R.D. at 593.

The court finds Rule 26 allows Highmark's inquiries regarding the type of pipe and testing done by NPC on other projects because the Rule "extend[s] to

those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." Hofer, 981 F.2d at 380.  NPC will answer the interrogatories and produce the documents describing the specifications and tests performed, including failure rates and any remedial steps taken to eliminate or reduce the failure rates on pipe used in the other projects.  This ruling does not allow Highmark to access the underlying contracts on the other projects as those documents are not likely to "lead to the discovery of admissible evidence." Id.

**DEFENDANT'S MOTION TO COMPEL**

NPC sought a court order compelling plaintiff to produce all of the documents requested in NPC's requests for production of documents.  (Docket 51).  During the course of the hearing, NPC accepted Highmark's statement that all documents had been produced (Docket 58-2).  Counsel agreed to work together so Highmark could produce in electronic format any spreadsheets or other worksheets requested by NPC.[7]  This rendered moot defendant's motion to compel.

---

[7]NPC's instructions accompanying the requests for production asked that "[e]lectronically stored information should be produced as **fully searchable** PDFs (OCR).  Alternatively, the electronically stored information can be produced in its native format.  Documents native format meaning .doc, docx, .xls, .pdf and e-mails provided in .pst format accessible through [O]utlook." (Docket 51-1, ¶11) (emphasis in original).

NPC seeks attorneys' fees because it was forced to file its motion to compel.  (Docket 52, p. 6).  "[A]fter Northwest Pipe filed its motion to compel, Highmark produced another 2,522 pages of documents and 18 videos on November 3, 2011."  (Docket 56, p. 5).  Highmark's justification for this later production was because "of the difficulty to find and compile some of the documents requested, Highmark was unable to produce all said documentation by October 24, 2011 [the date "to file any motion to compel after the parties work through their discovery dispute."[8]]."  (Docket 54, p. 2).  The court accepts plaintiff's explanation and finds plaintiff's efforts were made in good faith. Defendant's motion for attorney's fees (Docket 51) is denied.

## ORDER

Based on the above analysis, it is hereby

ORDERED that defendant's motion for a protective order (Docket 20) is denied.

IT IS FURTHER ORDERED that plaintiff shall revise and serve interrogatories 10, 12, 17, 18, and 19 and defendant shall timely answer these interrogatories.  Plaintiff's other interrogatories shall be answered within thirty (30) days of this order.  Defendant's answers and objections, if any, shall be signed in compliance with Fed. R. Civ. P. Rule 33(b)(5).

---

[8]Order granting extension.  (Docket 50).

21

IT IS FURTHER ORDERED that plaintiff's motion to compel (Docket 22) is denied as moot.

IT IS FURTHER ORDERED that plaintiff's second motion to compel (Docket 38) is granted in part and denied in part.  Within thirty (30) days of this order, defendant shall serve on plaintiff, but not file with the court, a fourth privilege log identifying each separate document with an adequate description in the same format as the third privilege log.  Plaintiff's request for production of all documents which do not properly include an attorney designation to justify an attorney-client privilege or for an *in camera* inspection of those documents by the court (Docket 45) is denied.

IT IS FURTHER ORDERED that defendant's motion to compel (Docket 51) is denied as moot.

IT IS FURTHER ORDERED that both parties' requests for assessment of attorneys' fees are denied.

Dated March 23, 2012.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

22