UNITED STATES DISTRICT COURT

**FILED**

MAR 0 1 2016



DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| HIGHMARK, INC., | * | CIV 10-5089 |
| Plaintiff, | * | |
| vs. | * | MEMORANDUM OPINION AND ORDER |
| NORTHWEST PIPE COMPANY, a Washington Corporation, | * | |
| Defendant and Third-Party Plaintiff, | * | |
| vs. | * | |
| FERBER ENGINEERING COMPANY, LLC, a South Dakota Corporation; and RUSTNOT CORROSION CONTROL SERVICES, INC., an Idaho Corporation, | * | |
| Third-Party Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff Highmark, Inc., a commercial general contractor, entered into a contract with the City of Rapid City to lay 20 inch steel pipe in the Jackson Springs Project with the bid being $3,715,385.25. Highmark was not bound to purchase the pipe from Defendant Northwest Pipe Company but chose to do so. The pipe was the subject of detailed specifications provided by the City. Among other specifications, the steel pipe was to be polyurethane coated with the coating adhesion tested to an average value of 2000 psi and a minimum value of 1750 psi. Highmark entered into a contract with Northwest Pipe Company to purchase the pipe. The price of the pipe was about $800,000.00.

Over 50% of the pipe did not meet specifications and only 5% of not meeting specifications

was allowable. In addition to not meeting the pressure specifications, it appeared that the pipe's ability to meet specifications continued to deteriorate. The pipe coating, not the pipe itself, was the problem. RustNot and Ferber Engineering Company, Inc. were brought into the lawsuit by Northwest Pipe Company as Third-Party Defendants. Ferber Engineering was the City's engineer for the Jackson Springs Project. Ferber Engineering retained RustNot (Mr. Spickelmire) as a consultant. Dowl, LLC was a Third-Party Defendant that has since been dismissed from the lawsuit by Stipulation.

After work on the project was stopped due to non-conforming pipe, the pipe was ultimately stripped and recoated by Northwest with a coating product from another supplier. Once completed, the pipe then met specifications. The process of delay and repair took eight (8) months to complete. The contract specifications provided by the City required that remedial action had to be completed within sixty (60) days.

In 2012 Highmark sued the City of Rapid City in South Dakota State Court as a result of the project. That suit was settled with the City paying Highmark $257,000.00. Some portion of that settlement may be a part of what Highmark claims as damages here, but that has not been fully developed in this record. Given the ruling on Highmark damages limitations in the contract in this opinion, that inquiry is moot.

Highmark in its Amended Complaint pled four counts, breach of contract, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. Highmark has moved for summary judgment as to liability.

There are no genuine disputed issues of material facts that prevent the Court from ruling on Plaintiff's Motion. Dr. Bell's opinions and deposition testimony on behalf of Northwest Pipe, taken as a whole, do not present disputed material facts. The facts show a breach of contract by Northwest Pipe even though the pipe was ultimately repaired but only after significant delay. The facts also show a breach of express warranty as that warranty was stated in the contract between Highmark and

2

Northwest Pipe. The goods were not "made in a workmanlike manner and in accordance with the specifications therefor supplied or agreed to by Contractor...." as stated in paragraph 10, the "Warranties" paragraph of the contract between Highmark and Northwest Pipe. That same paragraph 10 of the contract goes on to state:

> Seller's sole obligation under the foregoing express warranties shall be to repair, replace or refund the purchase price of, at Seller's option, any article of goods, or part thereof, which shall be returned to Seller's plant at Contractor's cost and proved by Contractor to be other than as warranted. The remedy hereby provided shall be the exclusive and sole remedy of Contractor for breach of the foregoing express warranties.

Paragraph 10 then states in bold:

**THE ABOVE EXPRESS WARRANTIES OF SELLER ARE THE SOLE WARRANTIES OF SELLER, AND ANY OTHER WARRANTIES, EXPRESSED, IMPLIED IN LAW OR IN FACT, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OF FITNESS FOR A PARTICULAR PURPOSE WHICH EXCEEDS THE FOREGOING EXPRESS WARRANTIES, ARE HEREBY DISCLAIMED BY SELLER.**

Highmark pleads the validity of the contract in its Amended Complaint. Highmark now claims the contract was not validly entered into in that it does not have a signature by an authorized signer at Northwest Pipe. Northwest Pipe sent a Confirming Quotation on 12/11/2009 with the typed in signature of its sales representative. The typed signature was to be the Northwest Pipe salesman's authentication of the document. *Northstream Investments, Inc. v. 1804 Country Store Co.*, 739 N.W.2d 44, 48-9 (S.D. 2007). This offer was accepted by Highmark with the signature of its President on 12/29/09. The contract was validly entered into and is binding upon the parties to the contract.

Highmark claims that the contract warranty remedy limitations are substantively and procedurally unconscionable. The contract provisions do strongly favor Northwest Pipe. However, Highmark had other suppliers it could have gone to for pipe. In addition, Highmark had the proposed contract for over two weeks and did not attempt to negotiate its terms and its President did not read the contract before signing the contract. If this was a consumer contract presented on a non-

3

negotiable basis, it would be unconscionable. Here, the parties are two commercial entities. Northwest Pipe is a large and sophisticated corporation and Highmark is a much smaller corporation that is much more than a mom and pop operation. Northwest Pipe and Highmark both must be considered as sophisticated commercial entities even though Northwest Pipe is more sophisticated. Both ultimately are experienced commercial entities with significant albeit varying degrees of sophistication. When experienced and relatively sophisticated commercial entities are contracting, the contract should not normally be rewritten by a court unless there is procedural unconscionability. The contract provisions under these facts are not substantively unconscionable.

Procedural unconscionability must also be considered. The court in *Golden Reward Min. Co. v. Jervis B. Webb Co.*, 772 F.Supp. 1118, 1124 (D.S.D. 1991), clearly considered procedural unconscionability even though those words were not used. The *Golden Reward* court made extensive reference to *Johnson v. John Deere*, 306 N.W.2d 231, 236 (S.D. 1981) which specifically recognizes and discusses procedural unconscionability. Here, no procedural unconscionability is present as Highmark had plenty of time to negotiate contract terms had it chosen to try to do so. In addition, Highmark could have gone to other pipe suppliers even though the pipe in question is custom made for the job as opposed to being an off the shelf item. Accordingly, summary judgment is granted in favor of Highmark on its breach of contract and breach of express warranty claims. The breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose claims are dismissed.

## REMEDY

Now that breach of contract and breach of express warranty claims have been granted as a matter of law, what is the remedy?

Northwest Pipe made a Motion for Partial Summary Judgment which addresses remedy limitations, among other issues. Paragraph 11 of the contract provides:

**EXCLUSION OF CONSEQUENTIAL AND INCIDENTAL DAMAGES:** No claim of any kind, whether as to goods delivered or for non-delivery of goods, shall

4

be greater in amount than the purchase price of the goods in respect of which such damages are claimed, and failure to give notice of claim within the time limits stated in paragraphs 9 and 10 above and shall constitute a waiver by Contractor of all claims in respect of such goods. The remedy hereby provided shall be the exclusive and sole remedy of Contractor, except as otherwise provided herein. Any right of Contractor to consequential and incidental damages for the breach by Seller of any term contained in this sales order, including the warranties provided in paragraph 10 above, is excluded.

Highmark claims that the limitation of damages provision is unconscionable. SDCL § 57A-2-719(3) provides:

Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

SDCL § 57A-2-302 provides that courts can decide the question of unconscionability in regard to a particular contract or clause. The applicable UCC comment to SDCL § 57A-2-302 provides in part:

The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.... The principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power.

The reference in the comment to "under the circumstances existing at the time of the making of the contract...." are the same considerations previously discussed concerning procedural unconscionability. There was freedom to contract with another pipe provider so there was no oppression. There might have been surprise, but it was not unfair surprise as the contract terms were available for reading and negotiating for 2 weeks before signing. Once again, under these facts, there is no showing of procedural unconscionability.

There are, however, different terms of limitation to consider in determining whether these remedy limitations are substantively unconscionable. Once again, the limitations are strongly in

5

favor of the seller, Northwest Pipe. The remedy limitations, although harsh, are not so harsh as to relieve a commercial buyer of some sophistication from the clear terms of a written contract that it did not read or attempt to renegotiate. If it were otherwise, there would be an argument for signing without reading and hoping for the best in the event of a problem. The remedy limitations are not dismissed as unconscionable.

In addition to the unconscionability arguments discussed above, Highmark urges that the limitations on damages in the contract should not be enforced because the limitation of remedies failed of its essential purpose.

Plaintiff cites *Hartzell v. Justus Co.*, 693 F.2d 770 (8th Cir. 1982). The Court is well familiar with the case, having been counsel of record for Justus. That case is inapposite as it was a consumer case and there was no remedy ultimately provided. After Justus Co. working further on the Justus Co. house, it still leaked and did at time of trial. Dr. Hartzell, the owner and occupier of the continually leaking house, was a medical doctor. The limiting clause in *Hartzell* did fail of its essential purpose as Dr. Hartzell never did get a house that did not leak. In the present case, the defective pipe was recoated so that it did ultimately meet specifications. It is true that although the pipe did ultimately meet specifications it did not meet other City specifications that required a fix within sixty (60) days, not eight (8) months. So what are we to make of that? How late can provision of what was contracted for be? Northwest Pipe did agree to provide coated pipe to Highmark "in accordance with the project plans and specifications." and they did not ultimately cure the defective pipe. However, the contract entered into between Highmark and Northwest Pipe provides for the remedies between those two contracting parties and that also applies to the City specifications incorporated into the contract between Highmark and Northwest Pipe. The specification of 60 days does not bind the Court in determing whether or not the limitation failed of its essential purpose.

Plaintiff also cites *Select Port, Inc. v. Babcock Swine, Inc.*, 640 F.2d 147 (8th Cir. 1981). Unlike *Justus*, *Select Pork* is not a consumer case. *Select Pork* could have delivered the specialized,

6

high quality pigs they had agreed to provide instead of the diseased and infected hogs they delivered from a dirt lot rather than their own confinement facility. *Select Pork* never did deliver all the quality hogs they contracted to deliver. Here, Northwest Pipe did provide pipe that ultimately met the specifications. The fact that repair was untimely by up to 8 months is not so long that the Court can say that the limitation of remedy failed of its essential purpose. It would be speculating to say how late a fix could be and yet not have this limitation of remedy fail of its essential purpose. Given the expense of delay in construction projects, especially with most construction in South Dakota being seasonal, this delay under these facts appears to be at the outer limits of finding that the limitation of remedy did not fail of its essential purpose. The provider of the product does not have unlimited time to remedy and still not have the limitation fail of its essential purpose. *Steele v. J. I. Case Company,* 197 Kan. 554, 559, 419 F.2d 902, 907 (1966) cited in *Golden Reward* at 234.

The phrase that a "limitation of remedies failed of its essential purpose" is a peculiar one. However, the remedy to repair or replace did not, as a matter of law, fail of its essential purpose in that Highmark and the City did ultimately still get pipe that met the specifications. *See generally Transp. Corp. of Am. v. IBM,* 30 F.3d 953, 959 (8th Cir. 1994). Delay is not uncommon in construction projects. If there are significant damages that can result from a delay in a construction project, and there usually are such damages, then those delays and damages can be the subject of contract negotiations. There are contract provisions here which do limit such damages, albeit to the detriment of the purchaser, Highmark. There was no attempt made by Highmark to alter those contract terms nor to go to another supplier of pipe. In conclusion, the remedy to repair or replace does not fail of its essential purpose, even though the delay strains that doctrine.

Another issue is that paragraph 16 of the contract regarding attorney's fees provides in part:

If a suit, action, inter-pleader or arbitration is commenced to enforce, interpret, or apply the terms of this agreement, then the prevailing party is entitled to its reasonable attorney's fees incurred at the trial court level, in any appellate court or in any arbitration. The amount of such attorney's fees shall be determined by the court or arbitrator in the proceeding. (Emphasis in original).

Highmark is the prevailing party and is entitled to attorney fees. Northwest Pipe has filed

7

a counterclaim for $141,000.00 under the $880,554.00 contract. Discovery discloses a larger counterclaim. That claim would not have arisen but for the breach of contract and breach of express warranty by Northwest Pipe so the attorney fees incurred for the counterclaim are not recoverable.

RUSTNOT CORROSION CONTROL SERVICES

RustNot Corrosion Control Services, Inc. has moved for Summary Judgment, Doc. 141, on Northwest Pipe's Third-Party claim.

One argument amounts to a claim that Northwest Pipe did not adequately claim tortious interference. The short answer is that the Third-Party Complaint contains the requirements set forth in *Gruhlke v. Sioux Empire Fed. Credit Union*, 756 N.W.2d 399, 406 (S.D. 2008). A part of the argument is that damages claimed were not provided by Northwest Pipe to RustNot. Paragraph 3.25 of the Third-Party Complaint alleges "3.25. If Northwest Pipe is liable to Highmark for damages in this suit, Northwest Pipe is entitled to collect such damages from Ferber, Dowl, and /or RustNot." Accordingly, the damages claimed against the Third-Party Defendants are whatever damages for which Northwest Pipe is liable to Highmark as alleged in the Third-Party Complaint. There was a timely disclosure of these claimed damages so the Motion to Dismiss for failure to provide claimed damages is denied.

The tortious interference claim is dismissed, but not for the reason urged by RustNot. RustNot appears to claim that the third party requirement of a tortious interference claim has not been met. That requirement has been met. What has not been met in resisting summary judgment is sufficient evidence of intentional interference with the contractual relationship between Highmark and Northwest Pipe and that such interference was accomplished through improper means or for an improper purpose.

The result is that the negligence claim against RustNot remains for whatever damages Highmark might receive from Northwest Pipe with those damages including Highmark's attorney fees.

8

## FERBER ENGINEERING

Ferber Engineering has moved for Summary Judgment on Northwest Pipe's negligence and tortious interference claims. Doc. 137.

As for the negligence claim, Northwest Pipe argues that they have expert opinion on negligence while Ferber has none. Of Northwest Pipe's three expert witnesses, only Mr. Pinney offers any opinion that is critical of Ferber's engineers. Pinney did not claim that it was negligence for Ferber to hire Mr. Spickelmire (RustNot) as a consultant even though he does not have an engineering degree. On that point, the Court observes that one can be an expert on a subject covered by engineering without having an engineering degree. Conversely, one can have an engineering degree, which is some indicia of having expertise, and yet upon examination not be an expert in an area even if expertise is claimed.

Mr. Pinney does claim that the Ferber engineer, Mr. Muck, should have supervised and analyzed the work of the consultant, Mr. Spickelmire of RustNot. Pinney opined in his deposition that Mr. Muck "should have taken more time to investigate what Spickelmire said to him. Spickelmire came in with a letter, I understand, directed to the city that said this stuff is no good. I don't know if he went without Muck seeing it or it just copied Muck, but anyhow the decision was made to eliminate that coating manufacturer, LifeLast, from the picture. It was made on information that doesn't support that conclusion."

The Court does not know which conclusion Pinney is referring to. Is it the conclusion that "this stuff is no good," presumably referring to the pipe product or is it referring to the LifeLast product? Or is the conclusion referred to the one to eliminate the LifeLast product as being something where the information does not support that conclusion? The record shows that various attempts were being made in Denver to receive more consistent results with the LifeLast product and is this a condemnation of going away from the LifeLast product too quickly as opposed to the conclusion that the pipe product as coated "is no good"?

9

In addition, on page 9 of the Pinney report he states: "It is my opinion that Mr. Muck [Ferber] should have involved experienced personnel to evaluation [sic] of the testing conducted by Mr. Mattson during his inspection and the direction stated by Mr. Spickelmire. Mr. Muck's [Ferber's] action did not meet the standard of care required of professional engineer."

In any event, Pinney opines that Ferber breached its duty of care when it did not properly supervise Spickelmire. Under the facts of this case that does create a genuine issue of material fact to be decided by the trier of fact and the Motion for Summary Judgment on the negligence claim is denied.

The Motion for Summary Judgment on the tortious interference claim is granted for the same reasons as stated above in granting summary judgment to RustNot on the tortious interference claim. There is no evidence that Ferber intentionally interfered with Northwest Pipe's contractual relationship with Highmark. Further, there is no evidence that Ferber accomplished an interference through improper means or for an improper purpose. This is a straight negligence case and nothing more than that.

The limitation on damages recoverable under the Third-Party Complaint that are applicable to the claim against RustNot are also applicable to the third party claims against Ferber.

The parties now know much more about where each now stands in this litigation. Negotiations or mediation either with the Magistrate Judge or privately would now seem to be more likely to be successful. Please advise the Court if this dispute cannot be settled and the Court will set a firm trial date in Rapid City, South Dakota.

Accordingly,

IT IS ORDERED:

1. That Northwest Pipe Company's Motion for Partial Summary Judgment (Doc. 133) is granted to the extent that the contractual limitations on damages are enforceable as discussed in this Order, and Highmark's claims for breach

10

of the implied warranty of merchantability and implied warranty of fitness for a particular purpose are dismissed;

2.      That Ferber Engineering Company's Motion for Summary Judgment (Doc. 137) is granted as to the claim for tortious interference and denied as to the negligence claim;

3.      That RustNot Corrosion Control Services, Inc.'s Motion for Summary Judgment (Doc. 141) is granted as to the claim for tortious interference and denied as to the negligence claim;

4.      That Highmark's Motion for Partial Summary Judgment (Doc. 146), is granted as to its claims for breach of contract and breach of express warranty; and

5.      That Dowl, LLC's Motions for Summary judgment and to dismiss (Doc. 127) are moot pursuant to the Order Granting Dismissal of Dowl (Doc. 165).

Dated this 1st day of March, 2016.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
DEPUTY

11